JOSEPH T. SHELTON, et al., plaintiffs in error, vs. JOHN B. WRIGHT, administrator of MARY M. SHELTON, deceased, defendant in error.

*An illegitimate child fully legitimated by an Act of the Legislature, passed by the procurement of the putative father, becomes his lawful child, and such child and his lawful children, upon the death of either, intestate, inherit from each other.*

Equity, from Taylor. Decision on demurrer to bill, and demurrer to plea to bill, by Judge LAMAR, April Term, 1858.

This bill was filed by the children and heirs at law of David Shelton, deceased, against John B. Wright, administrator of Mary Martha Shelton, deceased.

The bill alleges that David Shelton, was the father of a girl child called Mary Martha Nix; that said child was born out of lawful wedlock; that she was recognized and claimed by said David as his child, and that in 1854, he procured an Act of the Legislature to be passed, changing her name from Nix to that of Shelton, and fully legitimating her, and making her one of his heirs at law. That said David, in life, made a will by which, among other things, he bequeathed to said Mary Martha three thousand dollars; and afterwards said David departed this life, and said will was proven and recorded, and letters testamentary granted to E. H. Worrill. That afterwards the said Mary Martha died intestate, leaving next of kin, the complainants; that after her death, letters of administration were granted to Robert H. Dixon and John B. Wright, on her estate; that R. H. Dixon has since died, and that since his death the executor, Worrill, has paid over to the surviving administrator, the three thousand dollars by said will bequeathed to said Mary M., and that said sum is in the hands of said administrator, to be divided between her next of kin; that said Mary M. dying at the age of six years, owing no debts, the administrator has waived his right of delaying this suit twelve months after letters of administration granted him; and that they have requested said

administrator to distribute and pay to them the said sum of three thousand dollars, and that he has refused so to do. The prayer of the bill is, to compel the administrator to pay to and account to them for this said sum.

The defendant plead to the bill, that complainants had no interest in the subject matter of the suit, for that they, nor, either of them, are the heirs at law of said Mary Martha; that said Mary Martha was the illegitimate daughter of one Nancy Nix, who is still living, and that said Mary Martha, at the time of her death, had living a brother and sister, also illegitimate children of said Nancy Nix, and older than said Mary Martha, who are now living; that said Mary Martha was aged six years, and that after her birth, said David Shelton had a lawful wife then living, and had such wife many years before that time, and that complainants are the issue of said legal marriage, and that said Shelton and said Nancy Nix were never married; that said Shelton left a valid will, disposing of his whole estate; that said Act of 1854, legitimating said Mary Martha, and changing her name, was not procured or assented to by said Mary Martha, or by her said mother, brother or sister, or either of them, and if valid, which is denied, does not determine or prescribe who shall be the heirs at law of said Mary Martha, but left the law in relation thereto, as it heretofore stood.

Defendant also demurred to the bill because,

1st. The complainants had no interest whatsoever in the suit.

2d. Because said Act of 1854 does not constitute complainants, or either of them, the heirs at law of said Mary Martha Shelton.

3d. Because there is no equity in complainants' bill; and moved the same be dismissed.

Complainants demurred to the plea of defendant; and by agreement, the demurrer to the bill, and the demurrer to the

plea, were consolidated, to be heard and decided together and after argument, the Court decided, ordered and decreed, that the demurrer to the bill be sustained and the bill dismissed, and further, that the demurrer to the plea be overruled; to which decisions, orders and decrees, complainants excepted, and on the same have assigned error.

SMITH & POU, for plaintiffs in error.

A. F. OWEN ; STUBBS & HILL, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

The complainants in the bill are legitimate children of David Shelton, late of Talbot county, deceased. They claim to be heirs at law of Mary Martha Shelton, a daughter of the said David Shelton, born out of lawful wedlock, but fully legitimated and made the heir at law of the said David Shelton, and made capable of inheriting his property as though she had been born in lawful wedlock. Shelton, by his last will and testament, gave her a legacy of three thousand dollars. She survived him but a short time, and the complainants are claiming of her administrator, that legacy, as her heirs at law. The defendant demurs to the bill, on the grounds, viz:

1st. That complainants show that they have no interest whatever in the subject matter of the suit.

2d. That the Act of 24th February, 1854, (the legitimating Act,) does not constitute the complainants, or either of them, heirs at law of the intestate.

3d. Because there is no equity in the complainants' bill.

The defendant pleaded also to the bill, that the complainants are not the heirs at law of the intestate; but that, prior to the Act of legitimation of the said Mary Martha, she was the illegitimate daughter of Nancy Nix, and that, at the time of her death, she left a brother and sister, illegitimate children of the said Nancy Nix; that the said Shelton, at and af-

ter the birth of the said Mary Martha, had a lawful wife then living, and had such wife many years before that time, and that complainants are the issue of that lawful marriage; that the legitimating Act was not procured or assented to by the said Mary Martha, her mother, or her brothers, and that the said Act, if valid, does not define, prescribe or determine who shall be the heirs at law of the said Mary Martha, but left the law in relation thereto, as it theretefore stood.

The complainants demurred to the defendant's plea, and the Court heard argument of both demurrers at the same time, and overruled the demurrer to the plea, but sustained the demurrer to the bill and dismissed the bill; and complainants except.

The bill charges, that the Act of legitimation was procured to be passed by David Shelton.

The rights of the complainants depend upon the construc- of the Act of legitimation; and such Acts, I admit, must be construed strictly. If Shelton had died intestate, what was to prevent this child from inheriting his estate, or a part of it, at least? The Act was procured to be passed by Shelton. The property was his, which it would have been entitled to inherit, if he had died intestate. There was no vested right to it in any one else, to make his or her consent necessary to the va-lidity of the Act. The will was made before the Act, but the property did not vest in the legatee until the death of the testator, which was after the Act was passed. The Act therefore, interfered with no vested right of the child. The money alone is in contest here; that was bequeathed by Shelton. If the Act had not been passed, he might have changed the phra-seology of the will in regard to the money, and might have given it to his own children, as he did the negroes, in the event of the death of his child without children. He might have allowed it to stand to aid it in marriage. We cannot tell. So far as the act of legitimation affected rights of property coming from him, whether by descent or purchase, his con-sent was all that was necessary to give it validity. He had a

right to prescribe the condition on which any portion of *his* property should pass to it, whether it passed by his will, or by legislative Act, passed by his procurement. If the child were *fully* legitimated as his child, she became his legitimate child for all purposes, and the words added, which made her capable in law of inheriting his property, as if she had been born in lawful wedlock, gave strength and force to the enactment, and was not intended to, and did not limit, the effect of the previous comprehensive language. The child, then, was fully legitimated as the child of David Shelton. If she were his lawful child, she could not have been restricted in the enjoyment of all the rights and privileges of his children, born in lawful wedlock, and one of the rights and privileges of lawful children is, to inherit from each other. If one of the other children of Shelton had died intestate, and without issue, what was to hinder the legitimated daughter from coming in as a legal distributee in the estate? If she would have had a right to come in and share the estates of others of his children, who had died, now that she is dead, they come in and take her estate.

If the illegitimate had been entitled to an estate independent of that derived from Shelton, and one that he could not acquire without the consent of the child, and Shelton had an Act of legitimation passed, the effect of which would have been to take the property out of its legal course of inheritance, and to transfer it, on her death, to himself or his family, a question might arise, if that were not a case in which a Court of Chancery would relieve, against the effect of the Act. It would be one of the kind of private Acts, operating as a conveyance, against which a Court of Chancery in England would relieve. But that is not the question here. The child is fully legitimated as his child, is made his lawful child. It requires no liberal construction of the Act to determine this. It is the words of the Act. The Act of legitimation being an Act *fully* legitimating her, would operate on all the property, I apprehend, of the legitimated child, no matter

whence derived or how acquired. If not, there would be no necessity for the interposition of a Court of Chancery to relieve against its effect on any part of the child's property.

We think that, by the Act of legitimation, the daughter, Mary Martha, became fully legitimated as the lawful child of David Shelton, and that on its death the complainants became entitled to the property, under the statute of distributions.

Judgment reversed.