HENDERSON *et al. v.* NAPIER *et al.*

1. Where equitable proceedings are instituted which pray for relief touching rights and interests of the petitioners in certain specific property, and the petition discloses the fact that others are directly interested in the property, who are not made parties to the proceedings, and whose interests would be affected by a grant of the relief sought, such other persons are proper and necessary parties to the action.

2. It follows that when an equitable petition is brought by two heirs of a decedent against his administrator and the widow of the decedent, for the purpose not only of asserting the rights of the plaintiffs but also of having adjudicated the rights of other heirs in certain property of the estate by virtue of a parol agreement entered into between the administrator and the other heirs, and when it further appears from the allegations of the petition that such other heirs may have a claim or interest in the property adverse to that of the petitioners, it is not erroneous to sustain a demurrer to the petition on the ground that all of the heirs were not made parties to the proceedings.

Argued March 24, — Decided April 22, 1899.

Equitable petition.   Before Judge Fite.   Catoosa superior court.   June 21, 1898.

The petition was against Thomas C. Napier and M. E. Napier.   It alleged, in substance, that the latter was the widow and the former a son and the administrator of the plaintiffs' father, Thomas C. Napier, who died intestate, leaving, besides these parties, as his heirs at law, Aurella M. Baldwin and Leon M., Sarah R., Bertha B., and Claudia Napier.   Defendant Thomas C., as administrator and individually, entered into an

agreement with the plaintiffs and the other heirs that tne land of the decedent's estate, except lot 268, in which lot dower had been set apart to the widow, should be partitioned among them. He afterwards represented to the plaintiffs that this lot had been mortgaged by their father as security for a debt of their brother Leon M., amounting to about $1,500, and that the lien of the mortgage could be divested by a sale under an order of the court of ordinary, and if the plaintiffs would consent to the sale, he would as administrator obtain such an order, sell the lot, have their mother bid it in, and would make a deed to it to all the heirs, subject to her dower right, and then all the land of the estate, including this lot, could be partitioned in accordance with the original agreement. Relying upon these representations, and with the distinct understanding that when bid off by their mother the lot was to be deeded to all the heirs by Thomas C., as administrator, and then partitioned among them with the other lands of the estate, the plaintiffs consented that the sale be had. An order for the sale was accordingly obtained, and at the sale the lot was bid off by their mother for $300, but defendant Thomas C., in violation of his agreement with the plaintiffs, made a deed conveying the title to her absolutely. The representations by which he induced plaintiffs to consent to a sale were a fraud practised upon them in order that their mother might become the absolute owner of the lot; and she was cognizant of the agreement and was co-operating with him. He was then and is still living with her, and so are Mrs. Baldwin and Sarah R., Bertha B., and Claudia Napier, who are to become the owners of this lot upon her death. Since the sale the plaintiffs have applied to the defendants to have the agreement carried out by the execution of a deed by defendant M. E. Napier to all of the heirs, but she refuses to make such a deed. The lot is and at the time of the sale was worth from $600 to $1,000, and but for the agreement mentioned the husband of one of the plaintiffs and other persons would have attended the sale and bid that much. The fraudulent conduct of the defendants operated to the damage of the plaintiffs to the extent of what would have been the plaintiffs' pro rata share of what the lot would have

brought at the sale but for the fraud practised upon them. The prayers of the petition were, that defendant M. E. Napier be required to execute and deliver to the plaintiffs and the other heirs a deed conveying to them a fee-simple title to the lot referred to, or, in lieu thereof, that the title be decreed to be in the plaintiffs and the other heirs, subject to the dower right of M. E. Napier, except that the interest of Leon M. Napier be decreed to be in T. C. Napier, he having purchased that interest; and, if they were mistaken as to the relief thus prayed, that they have a judgment against T. C. Napier for damages sustained by reason of the alleged fraud; also for general relief.

The defendants demurred on the following grounds: (1) There is no equity in the petition, and the plaintiffs are not entitled to any relief, because the alleged agreement was made with intent to hinder, delay, and defraud the creditors of T. C. Napier deceased. (2) Plaintiffs do not offer to do equity, there being no offer to pay M. E. Napier the money she paid for the land. (3) All the heirs of T. C. Napier are not made parties. The court sustained the second and third grounds of the demurrer, and dismissed the petition.

*Payne & Payne*, for plaintiffs.
*R. J. McCamy*, for defendants.

SIMMONS, C. J. 1. It is a well-settled rule that all persons who are directly interested in the result of litigation should be made parties, either plaintiff or defendant, to proceedings for equitable relief. Civil Code, § 4844.

2. In the present case the allegations of the petition make a case, partly at least, for specific performance. The prayer is that the agreement entered into between the parties prior to the sale of the land be performed, but the petition discloses the fact that certain of the heirs, not parties to this proceeding, are to become the owners of the land upon the death of the mother. These heirs are interested in these proceedings, both because it is alleged that they entered into the agreement that the land should be sold, and because it is alleged that they "are to become the owners of this lot upon the death of the" mother and would be hurt by a decree of specific performance.

Full and final relief could not be administered by the court unless they were parties, and it was therefore necessary that they be made parties.   Complaint is made that the trial judge did not give the plaintiffs time to amend their petition and make parties; but under the facts disclosed there was no just cause of complaint upon this ground.   The judge, after hearing argument on the demurrer, held up his decision and at the time suggested to the plaintiffs' counsel that an amendment would probably cure the defects relied on in the demurrer; but no offer to amend was made.   The judge fixed a day on which his decision would be rendered, and on that day the decision was rendered.   Plaintiffs' counsel were at that time absent without leave of the court.   The judge was certainly not bound to withhold his decision until the appearance of plaintiffs' counsel, nor was he bound to give them opportunity to amend after the judgment had been pronounced.

We do not pass upon the other ground of the demurrer sustained by the lower court, except to say that it is doubtful under the facts alleged whether a tender was necessary.   As to the remaining ground not passed upon in the lower court, we are inclined to think that this ground of demurrer was good.   It seems too that this was an agreement not in writing and relating to land, and, under the case of *Roughton* v. *Rawlings*, 88 *Ga.* 819, within the statute of frauds and not enforceable.

*Judgment affirmed.     All the Justices concurring.*