WARE, administrator, *v.* MARTIN.

No. 18013. Submitted November 12, 1952—Decided January 12, 1953—
Rehearing denied February 9, 1953.

*L. C. Groves, Clement E. Sutton* and *Colley & Orr*, for plaintiff in error.

*Earle Norman,* contra.

Wyatt, Justice. ■ These headnotes require no elaboration.

■ This case has now appeared before this court the fourth

time.  See *Ware* v. *Martin,* 207 *Ga.* 512 (63 S. E. 2d, 335), 208
*Ga.* 330 (66 S. E. 2d, 737), 209 *Ga.* 29 (70 S. E. 2d, 446), where
a full statement of facts will be found that need not be again
stated here.

The real question presented to this court in the case now
under consideration is whether or not the evidence was sufficient
to sustain the verdict.  The answer to this question depends
upon whether or not the evidence adduced upon this trial that
did not appear in the former trials is sufficient to sustain the
verdict, this court having held that the evidence in the former
trials was not sufficient.

The evidence in this trial was substantially the same as in
the former trials with this additional testimony: T. L. Keeter,
among other things, testified as follows: "Tinie Keeter Martin
is my sister.  When my mother died I was between ten and
**eleven years of age.** . . Tinie Keeter Martin was a little
over two years of age. . . I remember a transaction that my
father and mother had with Mr. C. E. Keeter shortly before
my mother died.  Mr. C. E. Keeter and Mrs. C. E. Keeter, my
uncle and aunt, came out to the house where my mother was,
**and I heard a** conversation there between my father, Mr. John
Keeter, and Mr. C. E. Keeter.  My mother was on her death-
bed.  She knew she was going to die, and she asked Uncle
Charlie Keeter and his wife, Aunt Joe Keeter, to adopt Tinie
and raise her, and Uncle Charlie and Aunt Joe agreed to it
(referring to Mr. C. E. Keeter and Mrs. C. E. Keeter when
speaking of Uncle Charlie and Aunt Joe).  Uncle Charlie said
**he would take Tinie, adopt her, and raise** her just as he would
**his own child and would give** her the best of care.  My father,
Mr. John Keeter, replied, 'Me and Mag agree to it,' and said,
'That is the only reason she didn't want to die as Tinie was so
little and she didn't want to die and leave her.  My father
called my mother Mag, that being her name. . . We started
to move to North Carolina, and my father said that Tinie
could not go with us as they had adopted her to Uncle Charlie
and Aunt Joe."

This evidence clearly and unmistakably shows a contract to
adopt, and supplies every deficiency pointed out when the case
was previously before this court.  It is not seriously contended

by the plaintiff in error that this evidence fails to show a contract to adopt, but it is contended that the evidence should not have been accepted by the jury and should not be accepted by this court as being sufficient for this purpose. It is contended, in the first place, that it is unreasonable to believe that a boy between the age of ten and eleven years could remember now the details of this conversation. No valid reason occurs to our minds why he could not do so. In any event, that is a question that addressed itself to the jury and the trial judge.

It is next contended that this evidence should not be accepted by this court for the reason the witness, T. L. Keeter, gave as his reason for not testifying in the previous trial of this case, the fact that for three years he was so much under the influence of liquor that he was unable to testify. He stated further that, at the time of the trial now under consideration, he was entirely sober and had been continuously so for four months. We can not consent to the consigning to the ranks of perjurers for the remainder of their lives all persons who have used intoxicating liquors to excess at some time in their lives. If we did so, as regrettable as it is, we would greatly add to the number of known perjurers in this country. Again this is a question that addresses itself to the judge and the jury, and not to this court.

Three times this case has been tried before a jury, and each time a verdict was rendered in favor of the defendant in error. Three times the trial judge has approved the verdict. The evidence as presented on this trial meets all the requirements of law, and no reason appears why this court should interfere.

It follows, there is no merit in any of the contentions of the plaintiff in error.

*Judgment affirmed. All the Justices concur, except Atkinson, P. J., not participating.*