### 41.  HAGAN & DODD COMPANY v. RIGBERS.

1. One whose property rights in his trade-mark or trade name have been
   infringed, and whose business interests have been damaged by fraudu-
   lent acts and unfair trade, has an election of remedies. He may sue at
   law for the damages that he has suffered, or he may proceed in equity
   for an accounting, injunction, etc.
2. When suit in such case was brought in the city court of Atlanta for
   damages alone, and no affirmative equitable relief was asked for, the
   court erred in dismissing the same on the ground that it had "no juris-
   diction, the matters complained of being cognizable in equity."

Action for damages, from city court of Atlanta—Judge Reid.
June 29, 1906.

Argued January 16,—Decided January 29, 1907.

*James E. Warren,* for plaintiff.

*Moore, Gordon & Branch,* for defendant.

Hagan & Dodd Company brought suit in the city court of

Atlanta against M. L. Rigbers for damages, the petition in full being as follows: "The petition of Hagan and Dodd Company, a corporation under the laws of Georgia, respectfully shows: (1) That M. L. Rigbers of said State and county has injured and damaged them in the sum of twenty-five thousand dollars, by reason of the following facts: Petitioners are manufacturers of a certain ginger ale, and have adopted for their use a trade-mark, which they have registered, said trade-mark being 'Red Rock.' (2) That through the expenditure of large sums of money in advertising and pushing their business, petitioners have had, and are having, extensive sales of their ginger ale in this and other States of the Union. (3) That said ginger ale has obtained a wide celebrity throughout the country, on account of its high character and quality. (4) Petitioner has adopted said name to distinguish their goods from those manufactured and sold by others, and that they may be known in the market as theirs, and to receive such profits from the sale of the same as would result from their high character and quality. (5) That said trade-mark has been used by petitioners a number of years, and they claim the exclusive use of them. (6) That petitioner has expended years in thought and experiments in bringing said ginger ale up to the highest standard, and now believe that they are manufacturing the finest quality of ginger ale on the market. (7) Petitioner alleges that the defendant, M. L. Rigbers, is the owner and operator of a number of soda fountains in the city of Atlanta, said county, where soft drinks are sold. (8) That defendant has sold, and is now selling, at his said fountains, a spurious article of ginger ale for 'Red Rock Ginger Ale,' knowing it not to be 'Red Rock Ginger Ale,' and after defendant had been warned by petitioner to desist from the same. (9) That so general has become this imposition on the public by defendant, and others in the same business, that petitioner has noticed a large falling off in the sale of 'Red Rock Ginger Ale,' especially in the city of Atlanta. (10) That defendant is able to buy an inferior quality of ginger ale at a very much less price than he pays for 'Red Rock Ginger Ale,' and for that reason he is palming off on the public, who drink at his fountains, said inferior and spurious ginger ale, representing it to be 'Red Rock Ginger Ale.' (11) That said deception is practiced for the purpose and with the intention of deceiving and misleading the public. (12)

That defendant sells said inferior quality of ginger ale under the name of 'Red Rock,' because it increases his profits, to the great injury and wrong of this petitioner, in that it tends and is destroying in a large measure the reputation made by petitioner as manufacturer of a higher grade of ginger ale.   (13) That if defendant and others are allowed to continue to sell an inferior ginger ale for 'Red Rock,' petitioner's business will soon be entirely destroyed. Wherefore petitioner prays that process may issue requiring defendant to be and appear at the next term of this the city court of Atlanta to answer this suit for damages."

To this petition the defendant filed a general demurrer, and several special demurrers.   The petition is probably defective, in that it does not fully and clearly set forth the cause of action.   The court, however, without reference to any formal defects that might have been cured by appropriate amendments, sustained the general demurrer and dismissed the case, on the ground that the court had no jurisdiction as to the subject-matter, the same being cognizable only in a court of equity.   This judgment is assigned as error.

HILL, C. J.   (After stating the case.)

1. Unquestionably a court of equity has jurisdiction to give affirmative equitable relief in all cases of the fraudulent use of trade-marks, trade names or devices, or any unfair competition in trade, resulting in injury or threatened injury to the property or business of another.   In this State such jurisdiction is expressly provided for in the Civil Code, § 4035, in the following language: "Any attempt to encroach upon the business of a trader, or other person, by the use of similar trade-marks, names, or devices, with the intention of deceiving and misleading the public, is a fraud for which equity grants relief."   A construction of this section of the code, in connection with the decisions of the courts on cognate subjects, would extend the application of equitable relief to all cases of unfair competition in trade, resulting in damage either to the property or the business of another.   There are many cases in England and in this country establishing the correctness of the foregoing propositions.   And indeed, it can not be doubted that in many such cases courts of law are inadequate to give complete relief, and that courts of equity, by reason of their broader powers, in compelling discovery, accounting, and injunction, can give to the injured party fuller and more ample remedies than a court of

law. We have been unable, however, to find any case holding that jurisdiction of such subject-matters is exclusively with a court of equity; on the contrary, we think the principle clearly deducible from all the authorities is that a party who has been injured and damaged by a fraudulent use of his trade-mark, or by any unfair competition in trade, has an election of remedies. He may waive his purely equitable relief, such as accounting, discovery, injunction, etc., and sue at law for the damages that he has suffered as the result of such unlawful and unfair conduct.

Browne on Trade Marks (2d ed.), §§ 451, 506, states that the party whose rights are infringed has his election of remedies; first, an action at law for damages; second, a suit in equity for an injunction, and an account of profits, etc. In Dennison Mfg. Co. v. Thomas Mfg. Co., 94 Fed. 651, 659, it is declared that "the law of trade-marks is but a part of the law of unfair competition in trade." In Coats v. Thread Co., 149 U. S. 562, the court said: "Irrespective of the technical question of trade-mark, the defendants have no right to dress their goods up in such manner as to deceive an intended purchaser and induce him to believe that he is buying those of the plaintiff." In Reddaway v. Banham (1896), App. Cas. 199, it was held that one person was not entitled to pass off his goods as those of another, by selling them under a name which was likely to deceive purchasers. In the same case the learned judge said: "I can not help saying, that, if the defendants are entitled to lead purchasers to believe that they are getting the plaintiff's manufactures when they are not, and thus to cheat the plaintiffs of some of their legitimate trade, I should regret to find that the law was powerless to enforce the most elementary principles of commercial morality. The name of a person, or work, forming part of the common stock of language, may become so far associated with the goods of a particular maker that it is capable of proof that the use of them by themselves, without explanation or qualification, by another manufacturer, would deceive the purchaser into the belief that he was getting the goods of A, when he was really getting the goods of B." The "Sapolio" case, reported in 43 Fed. 420, was, where the salesman of the defendant, when asked by an intending purchaser for "Sapolio," would hand out a different soap, called "Pride of the Kitchen," without explanation, and receive the customary price. It was held that this

was "an infringement of the plaintiff's trade-mark;" and that such conduct was "an unlawful use of the trade-mark or word symbol, the right of property in which belonged solely to the complainant;" that the act of the salesman in offering "Pride of the Kitchen," in response to a demand for "Sapolio," was, though done silently, a positively unlawful act; and that its unlawfulness consisted in an attempt to steal away the business of the complainant for the benefit of the manufacturers of the "Pride of the Kitchen." In Celluloid Mfg. Co. *v.* Cellonite, 32 Fed. 97, Mr. Justice Bradley used this language: "Fair competition in business is legitimate, and promotes the public good; but an unfair appropriation of another's business by using his name or trade mark, or an imitation thereof, calculated to deceive the public, or in any other way, is justly punishable by damages, and will be enjoined by a court of equity." The learned judge in the "Sapolio" case further said: "Any act or thing done to induce the belief that the one article is in fact the other is unfair, and indeed unlawful." The cases above quoted were causes in equity, and prayed for affirmative equitable relief, in addition to a decree for damages, and we cite them to show examples of unfair trade competition or conduct, and that in each case something more than damages was asked for. There are many cases of law in which similar acts of unfair trade are declared to give a right of action for damages resulting therefrom. One of the earliest cases was that of Southern *v.* How, 2 Popham, 144. "An action upon the case was brought into the common pleas by a clothier, that whereas he had gained great reputation for his making of his cloth, by reason of which he had great utterance to his great benefit and profit, and that he used to set his mark to his cloth, whereby it should be known to be his cloth; and another clothier, perceiving it, used the same mark to his ill-made cloth, on purpose to deceive, and it was resolved that the action did well lie."

We might cite many other cases where suits at law for damages were brought as the result of fraudulent and unfair trade, or use of another's trade name or trade-mark, but we content ourselves with reference to the case of the *Thedford Medicine Co. v. Curry,* 96 *Ga.* 89, the headnote being as follows, "The declaration as amended alleging, in substance, that the plaintiff was profitably engaged in the manufacture and sale of a certain valuable medi-

cine; that the defendant fraudulently, deceitfully, and with intent to injure the plaintiffs' business, did manufacture, under a similar name, a spurious and inferior medicine, in imitation of that made by the plaintiffs, and, by simulating the wrappers used by the plaintiffs in putting up their medicine, did deceive the public and thus sell large quantities of the spurious medicine as the genuine, all of which was to the plaintiff's injury and damage, a cause of action was set forth, and the demurrer to the petition should not have been sustained." Justice Lumpkin, in the opinion, said that by these acts of the defendant "a wrong was committed for which the law should afford a remedy in damages."

We cite the foregoing cases for the purpose of showing that both courts of equity and law have taken jurisdiction of cases of infringement of trade-marks, trade names, symbols, and devices, and unfair trade; the jurisdiction selected in each case being determined by the character and extent of the relief sought. If the plaintiff seeks redress alone in damages for the loss sustained by him, resulting from the unlawful acts complained of, he has a right to resort to a court of law, and can recover in such suit, if the proof entitles him to do so. If the plaintiff in the suit, in addition to his claim for damages, wants an accounting to determine the profits accruing to the defendant by reason of his unlawful conduct, and an injunction to restrain the defendant from the commission of further wrongs of a similar character, he must resort to a court of equity. We think this distinction is clearly established by authority, and is applicable in the determination of the question now under consideration.

In the liberal rules of pleading in this State, it is sometimes difficult to determine whether the action is one of law or equity; and in cases of doubt the character of the relief sought furnishes the test by which to determine the character of the suit. The piratical and fraudulent acts set out in the plaintiff's petition demand legal redress. And while his petition is defective in some respects, the allegations therein made constitute a sufficient foundation on which, by proper amendment, a clear, legal superstructure can be built. We think the plaintiff has a more complete remedy in a court of equity, but he has elected to bring his suit for damages only, in a court of law, and without asking for any affirmative equitable relief. The learned judge below held that the

city court had no jurisdiction; the subject-matter of the petition being cognizable in a court of equity. The subject-matter of the petition was certain acts of a fraudulent character, constituting dishonest and unfair trade, and resulting in damage to the property and business of the plaintiff, his property being his trademark and trade name, and his business being large and profitable sales of the commodity manufactured under his said trade-mark and trade name; and for these wrongs he asks redress in damages. We think the action clearly maintainable in a court of law, under the repeated rulings of the courts, as well as by the character of the suit; and we hold that the court committed an error in dismissing said suit on the ground that the court was without jurisdiction, because the matters complained of were cognizable in a court of equity.

In addition to cases cited in the body of this opinion, we cite: Hopkins on Unfair Trade, (actions at law) chap. 12, §111, bottom p. 240; Browne on Trade Marks (2d ed.), chap. 9, §§457, 470, 462 (remedy at law or in equity clearly recognized); Id. 460; (election of remedies) chap. 11, §§506, 507; 21 Enc. Pl. & Pr. 752, 758, 750; 26 Am. & Eng. Enc. L. (1st ed.) 477.

*Judgment reversed.*